UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID IVERSON, | : | CIVIL ACTION NO. 3:CV-12-1897 |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | **FILED** |
| LT. FLOWERS, et al., | : | **SCRANTON** |
| | : | SEP 3 0 2014 |
| Defendants | : | |

PER _____
DEPUTY CLERK

## MEMORANDUM

## I.    Background

Plaintiff, David Iverson, an inmate formerly confined in the State
Correctional Institution, Camp Hill ("SCI-Camp Hill")[1], Pennsylvania, filed the
above captioned civil rights action pursuant to 42 U.S.C. § 1983.  The action
proceeds via an amended complaint.  (Doc. 39).  Plaintiff names as Defendants,
the Department of Corrections and the following SCI-Camp Hill employees:
former Superintendent Richard Southers, Acting Superintendent Jeffrey Ditty,
Captain John Doe, Lt. Flowers, Lt. Becker, Nurse Supervisor Janeen Davis, Nurse
Patricia Botti, and Correctional Officer John Doe.[2]  Id.

---

[1]Plaintiff is currently housed in the State Correctional Institution, Graterford,
Pennsylvania.

[2]To date, neither Captain John Doe, nor Correctional Officer John Doe
Defendants have been specifically identified or served, and no attorney has entered
an appearance on behalf of any of these Defendants.

Presently pending is Defendants' partial motion to dismiss. (Doc. 41). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendants' motion to dismiss will be granted, in part, and denied, in part.

## II.   **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court "is not bound to accept as true a legal conclusion couched as a factual

2

allegation." <u>Twombly</u>, 550 U.S. at 555 (quoted case omitted).  Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." <u>Capogrosso v. The Supreme Court of New Jersey</u>, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, the court must "conduct a two-part analysis." <u>Fowler</u>, 578 F.3d at 210.  First, the court separates the factual elements from the legal elements and disregard the legal conclusions. <u>Id</u>. at 210-11. Second, it "determine[s] whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief'". <u>Id</u>. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e) because he was granted <u>in forma pauperis</u> status to pursue this suit.  The court's obligation to dismiss a complaint under the Prison Litigation Reform Act's ("PLRA") screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. <u>See, e.g.</u>, <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000).  Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless <u>sua sponte</u> rest its dismissal upon such ground

pursuant to the screening provisions of the PLRA. See Id.; Dare v. U.S., 2007 WL 1811198, *4 (W.D. Pa. 2007), aff'd, 264 Fed Appx. 183 (3d Cir. 2008).

## III.   Allegations in Plaintiff's Amended Complaint.

On October 1, 2011, between the hour of 8:00 a.m. - 9:00 a.m., Defendant Flowers and others assigned to her extraction team came to Plaintiff's cell door for "a planned use of force." (Doc. 39, p. 4).[3]  Plaintiff alleges that Defendant Flowers "read the Plaintiff the DOC's policy (notice for use of restraint chair) notifying the Plaintiff that he was being placed in the Restraint Chair, A.K.A., 'The Devil's Chair', to be forced/tube-fed per court order, do [sic] to the Plaintiff's refusal to accept meals, after having his food trey [sic] tampered with by a retaliating correctional officer working in the S.M.U. at Camp Hill." Id.  Plaintiff claims that "despite the Plaintiff's compliance to be handcuffed and escorted from his cell 'without incident,' the Plaintiff was rushed from his cell, and taken to the strip cage to be search." Id.  Upon completion of the strip search, "'without incident', the Plaintiff was placed in leg-irons (shackles) and was aggressively 'speed balled' (forcing an inmate to run while shackled to cause pain) to the cell that contained the restraint chair." Id.  He alleges that once at the cell, he was "aggressively forced into the devil's chair where ankle, wrist and shoulder

---

[3]This Memorandum refers to the page numbers of the Amended Complaint that were assigned by the Court.

4

restraints were squeezed on the Plaintiff so tight that the restraints cut into the Plaintiff's left arm-pit, crushed & damaged the nerves in the Plaintiff's left wrist, and caused both of the Plaintiff's legs and feet to go numb." Id. Plaintiff states that he was "then forced-tube-fed without incident." Id.

The complaint states that after completion of the tube-feeding, Defendant Flowers "walked out of the cell, slammed the cell door shut behind her, and left the Plaintiff to suffer, confined to the chair's restricted sitting position without further reason, for approximately eight hours long, after any justification had abated, despite the clear lack of a plausible safety or medical reason for the Plaintiff's retention in the chair." (Doc. 39, p. 4). As a result, Plaintiff alleges that Defendants "knowingly subjected [him] to a substantial risk of physical harm, unnecessary pain caused by tight restraints cutting into his flesh while in a restricted position, deprived Plaintiff of bathroom breaks the entire eight hours creating further discomfort & humiliation and denied the Plaintiff exercise periods the entire eighth hours of being confined to this chair's restricted position which would have at the least relieved some of the pain in Plaintiff's limbs." Id. He alleges that "after the first two hours of being totally immobilized in the restricted position, unable to move any of his limbs, with tight restraints cutting into his flesh, the Plaintiff was in so much pain that he remembers passing out and waking upon on three separate occasions unable to endure the cruel punishment." (Doc.

5

39, p. 5). Although "every 15 minutes an officer made security rounds, the Plaintiff cried out for help, and plead to be exercised, but to no avail." Id.

Lt. Flowers left duty at 2:00 p.m. and was replaced by Lt. Becker, who Plaintiff states "also failed as the 2-10 Officer-in-Charge to give the Plaintiff his required bathroom breaks and exercise periods." (Doc. 39, p. 6). Plaintiff alleges that "sometime around 4-5:00 p.m., [he] was released by Defendant Becker." Id. Plaintiff asked Lt. Becker why he wasn't allowed a bathroom or exercise break and Lt. Becker responded by shrugging his shoulders. Id.

Plaintiff claims that on October 2, 2011, "the same punitive events re-occurred, wherefore the Defendants once again (after the sole purpose of confining the Plaintiff in the restraint chair was completed), left the Plaintiff wrongfully confined in the restraint chair for approximately 8-hours, without further reason, only allowing the Plaintiff one exercise on this day, four hours after the Plaintiff was initially placed in the chair, which once again violated the Defendants' own written policy." Id.

On October 3, 2011, Plaintiff was "placed/confined in the restraint chair once again to be force fed (per court order) in the same manner as on October 01 & 02, 2011, however, on this day, Defendants made it a point to release the Plaintiff from the chair upon the completion of the force-feeding, wherefore, the Defendants wouldn't be able to hide their unconstitutional acts on a working day

(Monday), where other administrative staff would be present." Id.

On September 24, 2012, Plaintiff filed the instant action, seeking compensatory and punitive damages, as well as injunctive relief, for the following thirteen (13) claims for relief: Count 1: Excessive Confinement, Count 2: Misuse of Force; Count 3: Assault and Battery; Counts 4, 12, and 13: Deliberate Indifference to the Health and Safety of Inmates; Count 5: Denial or Delay of Access to Medical Treatment; Count 6: Equal Protection of the Law; Count 7: Procedural Due Process; Count 8: Atypical and Significant Hardship; Count 9: Intentional Infliction of Emotional Distress; Count 10: Negligence; and Count 11: Improperly Seized Property. (Doc. 39 at pp. 12-29).

Defendants' motion to dismiss is directed at all claims in the amended complaint, except for Plaintiff's Count 1, excessive confinement. (Doc. 41, p. 9).

## IV. **Discussion**

### A. **Official Capacity Suits**

It is well-settled that neither a state nor its agencies is a "person" as that term is used in Section 1983 and, thus, is not subject to suit. Hafer v. Melo, 502 U.S. 21, 25–27 (1991); Adams v. Hunsberger, 262 Fed. Appx. 478, 481 (3d Cir. 2008) (holding that the Department of Corrections is not a "person" under 1983). Accordingly, the section 1983 claim against the Department of Corrections will be dismissed.

7

The Supreme Court has recognized that when a plaintiff sues a state agent in his or her official capacity, the suit is not against the "person," but against the official's office. Hafer, 502 U.S. at 27; Kentucky v. Graham, 473 U.S. 159 (1985) (concluding that claims against state officials in their official capacities are treated as claims against the governmental entity). Therefore, state officials acting in their official capacities are outside the class of persons subject to liability under section 1983. Hafer, 502 U.S. at 22–23. To that extent, any § 1983 claims asserted against the named individuals in their "official capacities" will be dismissed.

Further, under the Eleventh Amendment, states are generally immune from suit brought in federal court by private parties. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984). "A plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." Chittister v. Dep't of Community & Economic Dev., 226 F.3d 223, 226 (3d Cir. 2000). Section 1983 does not abrogate Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332, 345 (1979). In other words, the Eleventh Amendment prohibits a lawsuit against state officials sued in their official capacities because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury. Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990). The Eleventh Amendment is not

a bar to suit against state officials in their personal capacities.  Id.

Because the Department of Corrections is "a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment Immunity." Lavia v. Pennsylvania, 224 F.3d 190, 195 (3d Cir. 2000) (citing 71 Pa. Stat. Ann. § 61).  The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity.  See id.  Accordingly, Plaintiff's claims against the Department of Corrections are barred by the Eleventh Amendment and will be dismissed.

To the extent Plaintiff argues that the Department of Corrections may be liable pursuant to Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978), the "Monell" theory of liability does not circumvent the sovereign immunity bar.  Under Section 1983, a municipality is a "person" subject to suit, but its liability cannot be vicarious; that is, it will not be held liable via respondeat superior for the acts of municipal employees.  A municipality may, however, be liable to the extent that its own policies and practices led to a deprivation of constitutional rights.  See id. (finding that local government units are "persons" for purposes of Section 1983 and can be held liable when a constitutional deprivation arises from a governmental custom or policy).  Plaintiff alleges that he is suing the Department of Corrections for "constitutional violations caused by a 'custom or usage' of a policy that has injured the Plaintiff

and several other inmates on a routined basis"; specifically, that "it is routinely

practiced in the Pa. Dept. of Corrections to place an inmate in the restraint chair

for at least 8 hours without any manipulation of the spine/back which is very cruel,

unusual and injurious." (Doc. 44, p. 4, brief in opposition).  As established above,

however, the premise for <u>Monell</u> liability is lacking: DOC is not a "person" whose

acts will subject it to a Section 1983 claim.  Therefore, this "<u>Monell</u>" style claim is

barred and will be dismissed for this additional reason.

### B. Personal Involvement / Respondeat Superior

Defendants argue that Plaintiff fails to state a claim against Defendants

Nurse Supervisor Davis, Acting Superintendent Ditty, and Superintendent

Southers because the complaint reveals that they lack any personal involvement in

the wrongs, and Plaintiff's allegations against these Defendants are based solely

upon their supervisory roles.  (Doc. 41, pp. 12-14). The Court agrees.

Local government units and supervisors typically are not liable under

Section 1983 solely on a theory of respondeat superior.  <u>See</u> <u>City of Oklahoma

City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell</u>, 436 U.S. at 690-91 (holding

that municipal liability attaches only "when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may

fairly be said to represent official policy, inflicts the injury" complained of).  "A

defendant in a civil rights action must have personal involvement in the alleged

wrongs, liability cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003).  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207.  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

A Section 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal

quotation marks and citations omitted).

With respect to Defendants Southers, Ditty, and Davis,[4] a review of the complaint confirms that other then being listed as Defendants there are no specific assertions that any of these Defendants had any personal involvement in the purported violations of Plaintiff's rights under the Eighth Amendment. Rather, the claims asserted against these Defendants are premised either upon their respective supervisory positions within the DOC or their handling of Plaintiff's subsequent Inmate's Requests to Staff and institutional grievances. Based upon an application of the above standards, such allegations are insufficient to satisfy the personal involvement requirement standard of Rode.

To the extent that Plaintiff attempts to hold Defendants Southers and Ditty liable for failure to properly train and educate staff in the use of the restraint chair,

---

[4]The "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Flanagan v. Shively, 783 F. Supp. 922, 931–32 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992). Thus, to the extent that Defendants Davis and Southers are sued in their capacity for denying Plaintiff's grievance and appeal, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir. 2005) (concluding that involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (finding that because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, 2007 WL 4460617, *5 (W.D. Pa. 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

(Doc. 39 at 10), although prison officials must provide for the safety of inmates under their care, liability may not be imposed in a § 1983 action if injury resulted merely from a prison official's lack of due care. Davidson v. Cannon, 474 U.S. 344 (1986). Moreover, where a prisoner attempts to place responsibility on supervisory personnel, as Plaintiff does here, he must rely on more than the theory of respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976). Rather, the plaintiff must demonstrate a pattern and practice of deliberate indifference to his security.

Likewise, in order to hold officials liable for failure to supervise or train subordinates properly, the plaintiff must allege facts which demonstrate more than the mere occurrence of an isolated incident in which an individual was deprived of constitutional rights. Oklahoma City v. Tuttle, 471 U.S. 808, 820-21 (1985). Misconduct by guards, without evidence that the defendants were on notice that these particular officers had previously been guilty of wrongdoing or that there was a pattern or practice of misconduct in the department, does not state a claim. McClelland v. Facteau, 610 F.2d 693, 697-98 (10th Cir. 1979); Wilkinson v. Ellis, 484 F. Supp. 1072 (E.D. Pa. 1980). Here, because Plaintiff provides no facts establishing a pattern or practice of misconduct or abuse, no Section 1983 claim is stated. While Plaintiff does state he was subject to unnecessary force, that is not

enough to impose liability.  Therefore, his claim relating to failure to supervise and train will be dismissed.

### C.  Fourteenth Amendment Substantive Due Process

The United States Supreme Court has held that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  Albright v. Oliver, 510 U.S. 266, 273 (1994) (internal citations, quotations, and ellipses omitted).  See also Graham v. Connor, 490 U.S. 386, 395 (1989).

Plaintiff's allegations of due process violations related to excessive force, conditions of confinement, and his medical care during his restraint are properly addressed through the Eighth Amendment.  Mohamad v. Barone, 494 Fed. Appx. 212 (3d Cir. 2012); Albright, 510 U.S. at 273.

### D.  Sovereign Immunity

Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. C.S.A. § 2310.

14

Further, the General Assembly has specifically waived sovereign immunity in nine

areas, including cases involving medical professional liability.[5]  See 42 Pa. C.S.A.

§ 8522.  However, it is well-settled that immunity is waived only for claims

asserted against health care employees, and not to individuals who are not medical

professionals.  McCool v. Dep't of Corr., 984 A.2d 565, 570 (Pa. Comm. 2009)

(interpreting 42 Pa. C.S.A. § 8522(b)(2)).  Moreover, sovereign immunity applies

even to intentional torts committed by Commonwealth defendants acting in their

individual capacity.  Story v. Mechling, 412 F. Supp. 2d 509, 518 (W.D. Pa.

2006), aff'd, 214 F. App'x 161 (3rd Cir. 2007); Maute v. Frank, 657 A.2d 985,

986 (Pa. Super. Ct. 1995).  Willful misconduct does not vitiate a Commonwealth

employee's immunity if the employee is acting within the scope of his

---

[5]The nine exceptions to sovereign immunity pursuant to 42 Pa. C.S.A. § 8522(b) are:

> (1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody, or control of personal property in the possession or control of Commonwealth parties; (4) dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous condition of highways under the jurisdiction of Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; (7) sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of toxoid or vaccine.

employment, including intentional acts which cause emotional distress. <u>Mitchell</u>
<u>v. Luckenbill</u>, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010).

Here, Plaintiff's state law claims that Corrections Defendants failed to give
him exercise breaks, thereby committing negligence and the intentional infliction
of emotions distress, as well as having committed the torts of assault and battery,
are barred by Pennsylvania's sovereign immunity statute, as Defendants were
acting within the scope of their duty when they restrained Plaintiff for the purpose
of carrying out a court-ordered force-feeding to prevent Plaintiff from causing
himself harm through his hunger strike.  Moreover, Defendants are entitled to
sovereign immunity from the claims of assault, battery, and intentional infliction
of emotional distress. <u>Holt v. Northwest Pa. Training Partnership Consortium,</u>
<u>Inc.</u>, 694 A.2d 1134, 1140 (Pa. Commw. 1997).  Similarly, to the extent Plaintiff is
attempting to set forth negligent supervision or negligence in failure to train, the
Defendants are immune from suit. <u>Clark v. SEPTA</u>, 691 A.2d 988 (Pa. Commw.
Ct. 1997) (concluding that the failure to train or properly supervise subordinates is
not within enumerated exceptions to sovereign immunity). <u>See also Wesley v.</u>
<u>Hollis</u>, 2007 WL 1655483, *15–16 (E.D. Pa. 2007) (holding that the supervising
corrections officer was entitled to sovereign immunity against claim that he
negligently failed to oversee offending corrections officer).  Finally, to the extent

that Plaintiff is attempting to assert a medical negligence claim against any

Defendant that is not a health care employee of the DOC, such claim is also

subject to dismissal as it does not fall within any of the statutory exceptions to

sovereign immunity. McCool, 984 A.2d 565. See also Green v. Fisher, 2013 WL

664677, *6 (M.D. Pa. 2013) (interpreting 42 Pa. C.S.A. § 8522(b)(2) as applied to

a claim against DOC).

### E.  Certificate of Merit

Defendants move to dismiss any pendant state law claim of professional

negligence, arguing that Plaintiff has failed to comply with the requirements of

state law in lodging this claim.  Specifically, Defendants claim that Plaintiff has

failed to comply with Pennsylvania Rule of Civil Procedure 1042.3 ("Rule 1042

.3"), by not filing a valid certificate of merit with this malpractice claim.

Rule 1042.3 provides, in pertinent part,

> In any action based upon an allegation that a licensed professional
> deviated from an acceptable professional standard, the attorney for
> the plaintiff, or the plaintiff if not represented, shall file with the
> complaint or within sixty days after the filing of the complaint, a
> certificate of merit signed by the attorney or party that either
>
>> (1) an appropriate licensed professional has supplied a
>> written statement that there exists a reasonable
>> probability that the care, skill or knowledge exercised or
>> exhibited in the treatment, practice or work that is the
>> subject of the complaint, fell outside acceptable
>> professional standards and that such conduct was a cause

in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

* * *

(d) The court, upon good cause shown, shall extend the time for filing a certificate of merit for a period not to exceed sixty days. A motion to extend the time for filing a certificate of merit must be filed by the thirtieth day after the filing of a notice of intention to enter judgment of non pros on a professional liability claim under Rule 1042.6(a) or on or before the expiration of the extended time where a court has granted a motion to extend the time to file a certificate of merit, whichever is greater. The filing of a motion to extend tolls the time period within which a certificate of merit must be filed until the court rules upon the motion.

PA. R. CIV. P. 1042.3(a), (d).  The purpose of the required certificate of merit is to "assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings." Chamberlain v. Giampapa, 210 F.3d 154, 160 (3d Cir. 2000).

Rule 1042.3(a) applies to both pro se and represented plaintiffs and constitutes a rule of substantive state law with which plaintiffs in federal court must comply. See Iwanejko v. Cohen & Grigsby, P. C., 249 F. App'x 938, 944 (3d Cir. 2007) (holding that district courts must "appl[y] Rule 1042.3 as

18

substantive state law"); <u>Paige v. Holtzapple</u>, 2009 WL 2588849, *3 (M.D. Pa. 2009) (citing <u>Iwanejko</u>, 249 F. App'x at 944); <u>Fernandez v. Dep't of Justice</u>, No. 3:07–cv-1080, slip op. at 10 (M.D. Pa. Sept. 2, 2008) (recognizing that the plaintiff's <u>pro se</u> status "is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of com[i]ng forth with expert medical testimony"). Failure to file a certificate of merit under Rule 1042.3(a) or a motion for an extension under Rule 1042.3(d) is fatal unless the plaintiff demonstrates that his failure to comply is justified by a "reasonable excuse." <u>Perez v. Griffin</u>, 304 F. App'x 72, 74 (3d Cir. 2008); <u>see also</u> <u>Walsh v. Consol. Design & Eng'g, Inc.</u>, 2007 WL 2844829, *5 (E.D. Pa. 2007) ("Rule 1042.3 is subject to equitable considerations and a party who fails to timely file a certificate of merit may be relieved from the requirement where the defaulting party provides a reasonable explanation or legitimate excuse.").

In the instant case, Plaintiff has not provided the Court with a certificate of merit required by Rule 1042.3. As a result, any malpractice claim against Defendants will be dismissed.

### F. **Eighth Amendment Claim - Use of Force**

To establish an Eighth Amendment violation, Plaintiff must establish both a subjective and an objective component. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8,

(1992).  In considering the subjective component of an excessive force claim

under the Eighth Amendment, the central question is "whether force was applied

in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." Id. at 7; Fuentes v. Wagner, 106 F.3d at 348-49; see

also Concepcion v. Morton, 125 F. Supp. 2d 111, 125 (D. N.J. 2000) (holding that

hindsight will not be used to second guess the actions of correctional officers who

perceived a dangerous situation, as prison personnel are afforded great deference

when dealing with precarious situations).  Courts look to several factors in making

this determination, including: (1) the need for the application of force; (2) the

relationship between the need and the amount of force that was used; (3) the

extent of the injury inflicted; (4) the extent of the threat to the safety of staff and

inmates, as reasonably perceived by responsible officials on the basis of the facts

known to them; and (5) any efforts made to temper the severity of the response.

Hudson, 503 U.S. at 8 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).  The

objective prong is satisfied if the alleged wrongdoing was objectively "harmful

enough" to establish a constitutional violation.  Hudson, 503 U.S. at 8.

Defendants argue that Plaintiff's Eighth Amendment excessive use of force

claim should be dismissed because the initial force used to subdue Plaintiff was

used in good faith to carry out a court order and that his claims relate more to

being retained in the chair "after any justification had abated." <u>See</u> (Doc. 41 at pp. 19-20). As such, Defendants believe that Plaintiff's claims fall solely under the rubrics of an Eighth Amendment conditions-of-confinement claim rather than an excessive force claim. <u>See</u> <u>Young v. Beard</u>, 2013 WL 5230796 (W.D. Pa. 2013) (analyzing claim as a conditions of confinement claim where the mechanical restraint was used in a time and place somewhat removed from the initial altercation/event precipitating its use).

The Court, however, finds that Plaintiff's allegations that he was "rushed from his cell, and taken to the strip cage to be search", and once placed in leg-irons (shackles) was "aggressively 'speed balled' (forcing an inmate to run while shackled to cause pain) to the cell that contained the restraint chair", where he was "aggressively forced" into the restraint chair, sufficiently state Eighth Amendment claims against Defendants so as to survive a motion to dismiss. Accordingly, Defendants' motion to dismiss Plaintiff's Eighth Amendment excessive force claim will be denied. Plaintiff's claims may be analyzed under the categories of conditions of confinement and excessive use of force. <u>See</u> <u>Zimmerman v. Schaeffer</u>, 654 F. Supp. 2d 226, 248 (M.D. Pa. 2009) (Rambo, J.) (recognizing that parties may dispute whether claims regarding the use of mechanical restraints fall into the category of conditions of confinement or excessive force).

### G. **Equal Protection**

The Equal Protection Clause provides that no state shall "deny to any person

within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV,

§ 1. "This is not a command that all persons be treated alike but, rather, 'a

direction that all persons similarly situated should be treated alike'." Artway v.

Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City

of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)). See also

United States v. Armstrong, 517 U.S. 456 (1996) (holding that the Equal

Protection Clause prohibits decision to prosecute based on an unjustifiable

standard such as race, religion, or other arbitrary classification).

To demonstrate an equal protection violation, an inmate has the burden of

proving the existence of purposeful discrimination. Hernandez v. New York, 500

U.S. 352 (1991); McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Official action

does not violate the Equal Protection Clause solely because it results in a

disproportionate impact; proof of discriminatory intent or purpose is required to

show a violation. Village of Arlington Heights v. Metropolitan Housing

Development Corp., 429 U.S. 252, 265 (1977); Washington v. Davis, 426 U.S.

229, 239 (1977); Stehney v. Perry, 101 F.3d 925, 938 (3d Cir. 1996).

Discriminatory purpose implies more than intent as volition or intent as awareness

22

of consequences.  It implies that the decision maker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.  Hernandez, 500 U.S. at 360.  An inmate must offer evidence specific to his own case that would support an inference that unlawful considerations played a part in the adverse decision.  McCleskey, 481 U.S. at 293.

Plaintiff has failed to allege any facts from which it can be concluded that Defendants engaged in intentional or purposeful discrimination or that he was treated differently than similarly situated persons on the basis of his race, nationality or gender.  In short, Plaintiff does not show any discrimination with respect to his placement in the restraint chair to effectuate a court order.  There is no cognizable equal protection claim stated.  Additionally, Plaintiff has not stated any specific acts taken by Defendants to show any discriminatory animus attributable to them.  Thus, the equal protection claim will be dismissed.

## H. **Procedural Due Process**

In order to state a claim of a violation of the procedural aspect of the Due Process Clause, Plaintiff must first set out facts that demonstrate he had a protected liberty interest impaired by the Defendants' actions.  Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972).  Once a court determines that the interest asserted is protected by the Due Process Clause, the

question then becomes what process is due to protect it. <u>Morrissey</u>, 408 U.S. at 481.

As the Supreme Court of the United States has recognized on multiple occasions, "prisoners do not shed all constitutional rights at the prison gate [.]" <u>Sandin v. Conner</u>, 515 U.S. 472, 485 (1995) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555 (1984)). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." <u>Sandin</u>, 515 U.S. at 485 (internal quotations and citations omitted). One of these limitations, in the context of state prison regulations, is that a liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484 (internal citations and quotations omitted).

According to Plaintiff's own factual recitation, he acknowledges Defendants restrained him pursuant to a Court order to tube feed him. Thus, any process due him was afforded through the judicial proceeding resulting in the order to tube feed Plaintiff. Consequently, the procedural due process claim will be dismissed.

## I. **Improper Taking**

24

To the extent Plaintiff alleges that Defendants improperly deducted monies from his inmate account for medical expenses, <u>see</u> (Doc. 39 at 12, 25), Defendants argue that the Third Circuit has held that there is no due process violation if a prisoner is given prior notice of the policy and access to meaningful post-deprivation procedures.  <u>McCabe v. Pa Dep't of Corr.</u>, 523 Fed. App. 858 (3d Cir. 2013).  In his brief in opposition, Plaintiff states that he agrees with Defendants' argument.  <u>See</u> (Doc. 44 at 18).  Accordingly, his claim will be dismissed.

A separate Order will be issued.

Dated: September 29, 2014

_____
**United States District Judge**